ELIZABETH LIPPERD, Respondent, v. ESTATE OF N. B. LIPPERD, J. H. JEFFRIES, Administrator, Appellant.

St. Louis Court of Appeals.     Submitted on Briefs January 17, 1914.     Opinion Filed February 3, 1914.

1. EXECUTORS AND ADMINISTRATORS: Presentation of Claims. While the filing of a claim against a decedent's estate in the probate court without presentation to the administrator

as required by Sec. 203, R. S. 1909, is not sufficient as a presentation of the claim, it is proper to so file it, to advise the probate court that there is a creditor residing in that county who desires his claim adjudicated, and that the appointment of an administrator is necessary.

2. **APPELLATE PRACTICE: Change of Venue: Filing Transcript Out of Time: Harmless Error.** On the trial of a case which had been taken from one county to another, on, change of venue, defendant moved, before the empanelment of the jury, to require the clerk of the circuit court from which the change of venue was taken to send up an amended transcript and the original papers, including the original demand. A full transcript and the original papers were afterwards sent up and filed on the second day of the trial, and though defendant objected to the filing as out of time, he made no attack on the transcript nor did he apply for a continuance. The parties had previously stipulated that an office copy which had been filed was a true copy of the papers in question and might be considered for all purposes. *Held*, that defendant was not harmed by the failure to file duly certified papers in the first instance or by the subsequent filing.

3. **STATUTE OF LIMITATIONS: Five-Year Statute: Running Account: Executors and Administrators.** A demand against the estate of a decedent, in the nature of a continuing account for services rendered from the year 1891 to the date of the death of decedent in 1907, filed in 1910, an administrator having been appointed in the latter year, was not barred by the Statute of Limitations (Sec. 1889, R. S. 1909).

4. **EXECUTORS AND ADMINISTRATORS: Presentation of Claims: Statute of Limitations: Applicability of Iowa Statute.** Sec. 3349, Code Iowa, 1897, providing that certain demands against a decedent's estate, if not filed and allowed, or if filed and notice be not served within twelve months of the giving of the notice of the issuance of letter of administration, are barred, does not apply to a claim by a resident of this State, where the decedent, although leaving an estate which was being administered in Iowa, also had property in this State, notwithstanding Sec. 1895, R. S. 1909, providing that, when a cause of action has been fully barred by the laws of the State in which it originated, such bar shall be a complete defense to any action in this State, since a resident creditor is entitled to have the estate administered in, and his right to proceed determined by the general Statute of Limitations of, this State.

5. ————: **Action for Services Rendered Decedent: Sufficiency of Evidence.** In an action against the estate of decedent for services rendered him, *held*, under the evidence, that it was a question for the jury, whether claimant was a resident of this

State, so as to warrant her filing her claim against the administrator administering in this State, although, under the laws of Iowa, where another part of the estate was being administered, her claim would have been barred by limitation; *held, further*, that whether claimant rendered the services sued for, under a contract between decedent and herself that she was to be paid therefor, was a question for the jury.

6. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where the evidence is conflicting, it is the province of the jury to determine which theory is correct.

7. **INSTRUCTIONS: Refusal: Not Based on Evidence.** It is proper to refuse an instruction which assumes that a certain fact is true, when the existence or non-existence of such fact is a matter of dispute, under the evidence.

8. **EXECUTORS AND ADMINISTRATORS: Disputed Claim: Evidence.** On the trial of a claim against the estate of a decedent being administered by the public administrator, where the question of whether claimant was a resident of this State was one of the disputed issues in the case, the order of the probate court directing the public administrator to administer on the estate was properly received in evidence notwithstanding the recital therein that there were no known relatives of the deceased in the State entitled to administer on the estate, except the claimant, especially where defendant, though he objected to its admission, made no specific objection because of the presence of such recital.

9. **TRIAL PRACTICE: Limiting Consideration of Evidence.** Where a document which is admissible in evidence contains an objectionable recital, the party objecting to such recital should take steps to have it excluded from the consideration of the jury by an instruction.

10. **APPELLATE PRACTICE: Conclusiveness of Record.** Where, on appeal, the record on the trial of a claim against a decedent's estate showed affirmatively that claimant's affidavit to her claim was not offered or read in evidence, error could not be predicated thereon, notwithstanding the apparent concession of respondent's counsel that it was read in evidence.

11. **DOMESTIC RELATIONS: Services Rendered One Member by Another: Instructions: Omission Cured by Other Instructions.** On the trial of a claim for services rendered a decedent by his sister, if, as claimed, the instructions given for the claimant failed to require a finding of a mutual agreement that the services should be paid for, the omission was supplied by instructions given for defendant to find for defendant unless there was such a mutual agreement and unless the decedent expected

to pay for the services, and that a statement by one member of a family that another would be paid for services out of his property after death was not such a promise to pay as would support a recovery.

12. INSTRUCTIONS: Defects and Omissions Cured by Other Instructions.　The instructions given in the case are to be tested as a whole, so that where an instruction given for one party omits to require a finding essential to a recovery, such omis-. sion is cured by an instruction given for the other party which directs a finding for him unless such facts are found to be true.

13. APPELLATE PRACTICE: Invited Error.　A party will not be heard to complain, on appeal, of instructions given at his request, even though they are erroneous.

14. EXECUTORS AND ADMINISTRATORS: Claim Against Estate: Form of Judgment.　On the trial of a claim against a decedent's estate, certified to the circuit court, the judgment for claimant should not award execution, but should order that it be certified to the probate court for classification against the estate.

15. APPELLATE PRACTICE: Modifying Erroneous Judgment.　Under Sec. 2083, R. S. 1909, a judgment rendered against the estate of a decedent will not be reversed for error in awarding execution, but judgment will be rendered for the claimant by the appellate court and ordered certified to the probate court for classification against the estate.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

JUDGMENT MODIFIED AND AFFIRMED.

*Fogle & Fogle, James C. Dorian, O. D. Jones,* and *E. R. McKee* for appellant.

(1)　The court erred in refusing to sustain defendant's motion requiring the Schuyler county circuit clerk to send up amended transcript and the original papers, including the original demand, in the cause. R. S. of Mo. 1909, secs. 1934, 1939; Becker v. Lincoln Real Estate & B. Co., 118 Mo. App. 74.　(2)　The court erred in requiring defendant, over his objection, to go to trial of the cause without the original account, cause

of action, having been sent up from Schuyler county circuit court, without it being on file or in court, or present at the trial. Rothwell v. Morgan, 37 Mo. 107; Graham Exr. v. Marstad, 40 Mo. App. 333; Christie v. Railroad, 94 Mo. 453; Railroad v. Knudson, 62 Mo. 569. (3) Action on the account was barred by the general Statutes of Limitations. R. S. Mo. 1909, sec. 1895; Berkley v. Tootle, 163 Mo. 584; Wojtylak v. Kansas & T. Coal Co., 188 Mo. 262; Merritt Creamery Co. v. Railroad, 128 Mo. App. 424; McCoy v. Railroad, 134 Mo. App. 622; Baker v. Stonebraker's Admr's, 36 Mo. 338; 19 Am. & Eng. Enc. Law, 157. (4) The account was barred by the statutes of the State of Iowa, requiring demands against estates to be presented in one year after letters of administration were granted, which prevents plaintiff recovering in this State. R. S. 1909, sec. 1895; McCoy v. Railroad, 134 Mo. App. 622; Code of Iowa, 1897, secs. 3304, 3349; Noble v. Morrey, 19 Iowa, 509; Wilcox v. Jackson, 51 Iowa, 296; Brownell v. Williams, 54 Iowa, 353; Schlutter v. Dahling, 69 N. W. 884; Bentley v. Starr, 123 Iowa, 657; Insurance Co. v. Lisker, 122 Iowa, 341; R. S. 1909, sec. 1899; In re Estate of Williams, 107 N. W. 608; Sullivan v. Kenney, 148 Iowa, 361; Burston v. Pollock, 91 Iowa, 668; Hunt v. Fay, 7 Vt. 170; 19 Am. & Eng. Enc. of Law, p. 157; Commercial Bank v. Slater, 21 Minn. 172. (5) The court erred in permitting plaintiff to file amended transcript and original papers in the cause, over the objection of defendant, during the second day of the trial. (6) The court erred in admitting the original demand sued on, in evidence, over the objections of defendant. R. S. of 1909, sec. 201; Koch v. Hebel, 32 Mo. App. 103. (7) The court erred in admitting over the objections of defendant, order of probate court authorizing the public administrator to take charge of and administer the estate of N. B. Lipperd, which showed the probate court found plaintiff was then a resident of Missouri. R. S. 1909, sec. 201; Koch. v.

Hebel, 32 Mo. App. 193. (8) The court erred in admitting in evidence, over the objections of defendant, order of probate court certifying the cause to the circuit court for trial. (9) The court erred in refusing to sustain defendant's objection to question propounded to witness Jerry F. Barnett, by counsel for plaintiff, if Frank Lipperd was the son of N. B. Lipperd, and in failing to withdraw the answer from the consideration of the jury and also answer of witness stating "he thought plaintiff mostly had care and raising of the child." (10) The court erred in not excluding the evidence of witness Mitchell, on motion of defendant, who had been duly subpoenaed and had absented himself from court without permission of court or consent of defendant or his counsel, and gone to the State of Iowa, beyond the jurisdiction of the court and for that reason could not be further cross-examined by defendant's counsel, which they desired to do. (11) The court erred in refusing to instruct the jury at the close of all the evidence in the cause, as requested by defendant, to find for him and against plaintiff. Bash v. Bash, 9 Pa. St. 260; Anderson v. Osborne, 114 Pac. 160; Stone v. Troll, 134 Mo. App. 308; Rosenwold v. Middlebrook, 188 Mo. 58; Hall v. Finch, 29 Wis. 278; Duffey v. Duffey, 44 Pa. St. 260; Candors Appeal, 5 Watts and Serg. 513; Baird v. Railroad, 146 Mo. 256; Hayden v. Parsons, 70 Mo. App. 493; Lillard v. Wilson, 178 Mo. 145; McMorrow v. Dowell, 116 Mo. App. 289; Rose v. Mays, 139 Mo. App. 246. (12) The court erred in giving instructions Nos. 1 to 6 inclusive, and in giving either of them, over the objections of defendant, as requested by plaintiff. (13) The court erred in giving instruction No. 2, as requested by plaintiff, over the objection of defendant. Scully v. Scully, 28 Iowa, 548; Donoven v. Driscoll, 116 Iowa, 339; Brand v. Ray, 156 Mo. App. 622. (14) The court erred in giving instruction No. 4, as re-

quested by plaintiff, over the objection of defendant. (15) The court erred in refusing to give instruction requested by defendant, which is as follows: "In this case unless you believe from the greater weight of the evidence in the cause that notice in writing of the presentation of this claim in controversy was served on the administrator of the estate, or that he waived such presentation and notice thereof in writing within one year next after the 18th day of February, 1910, the first issue of the paper containing the notice of granting the letters in the State of Iowa to the said administrator your verdict should be for the defendant." (16) The court erred in refusing to sustain defendant's motion for new trial. Kelley's Probate Guide, sec. 328 or 338; Fry v. Morrison, 42 N. E. 774; Hyde v. Baldwin, 17 Pick. 303; Wooley v. Schrader, 4 N. E. 658; Garnett v. Dodge, 14 N. E. 44; 2 Williams on Executors, p. 1166; 2 Warners Law of Administration, pp. 974-976. (17) The court erred in refusing to sustain defendant's motion in arrest of judgment. (18) The judgment is erroneous. It is not warranted. Is against the administrator personally and not against the estate, for which reason alone it should be set aside. Woods v. Flanery, 89 Mo. App. 632; Brooks v. Duckworth's Admr., 59 Mo. 48. (19) The verdict of the jury was the result of passion and prejudice in favor of plaintiff. (20) The verdict of the jury was not warranted by the evidence under the instructions of the court. Anderson v. Cole et al., 134 Mo. 1; Goodman v. Griffith, 155 Mo. App. 574; Wherlly v. Raine, 106 Minn. 494; Cole v. Waters, 164 Mo. App. 567; Brand v. Ray, 156 Mo. App. 622; Johnson v. Johnson, 166 Mo. App. 732; Hall v. Finch's Admr., 29 Wis. 278; Duffey v. Duffey, 44 Pa. St. 402.

*Higbee & Mills, F. H. McCullough* and *Mills & Morris* for respondent.

(1) There is no merit in appellant's motion requiring the Schuyler county circuit clerk to certify an amended transcript and original papers, as there was a signed agreement by the attorneys for both the appellant and respondent, that a transcript furnished by respondent's attorneys was a true copy of said records and original demand and was to be so considered. It was a waiver. An amended transcript and the original demand were filed in the cause on the second day of the trial. (2) In appellant's second contention, there was no legal ground nor showing made by appellant that would entitle him to a continuance. (3) In appellant's point three, the account of respondent was not barred by the Statute of Limitation as she was a citizen of Missouri and the jury under appropriate instructions so found, and deceased left property in Missouri unadministered, he being a non-resident. Crohn v. Bank, 137 Mo. App. 1; Sec. 16, R. S. 1909 of Mo. (4) Respondent's claim was not barred by the Statute of Limitation of Iowa, as she was a citizen of Schuyler county, Missouri, and a creditor of deceased, who was a nonresident and owned land in Schuyler county, Missouri, at his death; respondent was not required to go to Iowa to present her claim, being a citizen of Missouri. Beecraft v. Lewis, 41 Mo. App. 546; Nailor v. Moffatt, 26 Mo. 126; Hays v. Fry, 110 Mo. App. 25; Crohn v. Bank, 137 Mo. App. 715. (5) The rights of appellant were not prejudiced by the filing of the amended transcript, and original papers in the cause, because the transcript agreed upon was a true copy thereof and by agreement was to be so treated. (6) In answer to appellant's point six, the original demand was a part of the record proper and admissible in the cause, and did not prejudice the right of appel-

lant. (7) The order of the probate court of Schuyler county authorizing the public administrator to take charge of and administer the estate of N. B. Lipperd, deceased was admissible to show the authority of said public administrator to take charge of said estate in Schuyler county, Missouri, and did not prejudice the right of appellant; if error it was harmless. It was a part of the record. R. S. Mo. 1909, sec. 2082; Cross v. Gould, 131 Mo. App. 585; State v. Taylor, 118 Mo. 153; Freedland v. Williamson, 220 Mo. 217. (8) As to appellant's point eight, the order of the probate court certifying the cause to the circuit clerk was admissible in evidence to show the jurisdiction of the circuit court; if error, it was not prejudicial. (9) The witness, Jerry F. Barnett testified at length as to his familiarity with the Lipperd family and as to who was the father and mother of the boy, Frank Lipperd, which was competent evidence to show why deceased often said he would rather have Lizzie than any other help that he could get, as Barnett's evidence further shows that respondent generally had charge of and cared for this child. The objection was made after the question was answered. The objection was general, "incompetent, irrelevant and immaterial" and no objection and if it had been made timely, would properly have been overruled. (10) The witness C. O. Mitchell was examined in chief and cross-examined at length, by appellant, and excused, and there is no claim that he left the court by the consent or connivance of respondent. Appellant did not show to the court what he expected to prove on further cross-examination of the witness. (11) The court did not err in refusing to instruct the jury at the close of all the evidence in the cause that plaintiff should not recover for the reason there was evidence to take the case to the jury. Butts v. National Exchange Bank, 99 Mo. App. 168; Buckley v. Kansas City, 156 Mo. 16; Sloop v. Railroad, 93 Mo. App. 605. (12) There was no error in plaintiff's in-

struction from 1 to 6 inclusive; they correctly stated
the law under the evidence. (13) Plaintiff's instruc-
tion number two is evidently the law as the evidence
shows plaintiff removed from Indiana at Lipperd's
request and on his express promise to pay for her
service. There was abundant evidence that it was the
intention of respondent to charge for her services at
the time she rendered them, and that deceased in-
tended to pay for the same. Ryans v. Hospes, 167 Mo.
342; Christenson v. McDemott, 123 Mo. App. 448. (14)
In reply to appellant's point fourteen, the respondent
was a creditor of the deceased, and a citizen of Mis-
souri; deceased being a nonresident and died owning
property in Schuyler county, Missouri (Sec. 16, R. S.
of Mo. 1909; Crohn v. Bank, 137 Mo. App. 715), the
respondent had the right to force an administration
in Missouri to collect her debt. (15) In reply to ap-
pellant's point fifteen we cite same authorities next
above and state that the evidence shows that respond-
ent was a citizen of the State of Missouri. (16) The
court correctly refused to sustain a motion for a new
trial, as the cause was tried without error or mistake,
the same submitted to the jury on instructions that
were plainly the law under the evidence; there was no
evidence admitted on the part of respondent that was
not admissible, nor was any of the evidence of defend-
ant improperly excluded. (17) That is no merit in
appellant's contention, that the court should arrest the
judgment; there was no error apparent upon the face
of the writ, pleadings, verdict or judgment. Stid v.
Railroad, 211 Mo. 411. (18) The verdict is in proper
form and the judgment conforms to the verdict and is
as follows: It is therefore considered, ordered and ad-
judged by the court that plaintiff have and recover
of and from the defendant the sum of seventeen hun-
dred and fifty dollars, so found by the jury, together
with the costs herein made and expended; it did not
award execution against the administrator; the de-

fendant is the estate of N. P. Lipperd, by John H. Jeffries, administrator. State ex rel. v. Crow, 8 Mo. App. 596. If it were not in proper form this court would enter the right judgment. Wood v. Flannery, 89 Mo. App. 632. (19) As to appellant's point nineteen that the verdict is the result of prejudice and passion, from the nature and extent of the services and the amount recovered, we cannot agree that the verdict was the result of prejudice and passion; sixteen years of service for $1750 would not indicate that it was rendered either through prejudice or by passion. (20) The verdict of the jury was for the right party and sustained by the evidence under the instructions given by the court to the jury. (21) If it be doubtful that services rendered by one party for another, were rendered as a gratuity or whether there was an intention one one side to charge and on the other to pay, it is for the jury to say whether under all the circumstances there was an implied contract for compensation. Voerster v. Kimkel, 86 Mo. App. 194. (22) Where valuable services are rendered on request and there are no circumstances tending to prove that the services were intended to be gratuitous, then the legal presumption arises that they were intended to be paid for. Voester v. Kimkle, 86 Mo. App. 194; McQueen v. Wilson, 51 Mo. App. 138; Smith v. Meyers, 19 Mo. 434. And whether services were intended as a gratuity or not is a question to be determined by the triers of the facts. Kerr v. Cusenbary, 60 Mo. App. 558; Lillard v. Wilson, 178 Mo. 145. (23) Appellant's counsel contend that respondent was not a resident of the State of Missouri. There was substantial evidence that she was a single person and moved to Lancaster, Missouri, in 1908 and declared Missouri to be her home. Residence is a matter of intention, and the question of residence was submitted to the jury and a finding for respondent put at rest the question of her residence. Harwood v. Larramore, Adm., 50 Mo. 414; Grave v.

Kansas City, 75 Mo. 675; Young v. Iron Co., 103 Mo. 324; Haseltine v. Smith, 154 Mo. 413. (24) The residence of a person is a matter of intention; a single person going out of the state to work does not make that the domicile of the person. There must be in addition the mental determination to make a home there; then the fact that respondent went to Iowa to work for Mr. Burgher did not make her a citizen of Iowa. State ex rel. Ramsey v. Dayton, 77 Mo. 678; In re Walker, 1 Mo. App. 404; McDowell v. Shoe Co., 135 Mo. App. 276.

STATEMENT.—In the year 1891, Napoleon B. Lipperd, a farmer, was the owner of lands in Davis county, Iowa, and Schuyler county, Missouri, both tracts appearing to have been under cultivation at the time and farmed by Mr. Lipperd, hereafter referred to as the decedent, or by his tenants, the decedent residing on his Davis county farm, the two places within a few miles of each other. In June of 1891, on his way home from Buffalo, New York, decedent visited his sisters, one of them a Mrs. Crouch, the other Miss Elizabeth Lipperd, the respondent here, plaintiff below, who then lived in Ripley county, Indiana. Mrs. Crouch was a widow with one son about 18 years of age, Miss Elizabeth Lipperd a single woman. There was testimony in the case tending to prove that Mr. Lipperd told his sister Elizabeth that he and his wife were invalids, and asked her to come to his Iowa home to live with and work for him. After Mr. Lipperd returned home he wrote to his sister Elizabeth, urging her to sell out her belongings and come to him. Plaintiff and her sister concluded to come west and accordingly sold their property in Indiana and moved to Iowa; this in October, 1891. Both sisters on reaching Iowa lived at their brother's house for about a year, when Mrs. Crouch and her son moved over to the Missouri farm. While the sisters were at the brother's farm, they both

worked as is usual for the women of a farmer family about the house and farm, Mrs. Crouch, however, without any expectation of payment. Except for an interval of apparently about 4 years, plaintiff lived with her brother on his Iowa farm from October, 1891, until the fall of 1902, when her brother, Mr. Lipperd, sold his personal property and moved to Oklahoma, taking his wife, his son, and his sister, the plaintiff, with him. During their residence in Oklahoma, the decedent and his wife appear to have been in bad health, and in addition to doing household work, plaintiff appears to have waited on and nursed both of them. After the death of his wife, in 1904, Mr. Lipperd, accompanied by his son and sister and his son's wife, the son having married in Texas, returned to Iowa, all of them living together on the Iowa farm, and although this is contradicted by the testimony of defendant, there is evidence tending to show that the decedent, Mr. Lipperd, was the head of the family, having stocked the farm for his son. At all events, Mr. Lipperd and his sister, Lipperd's son Frank and the wife of the latter, all lived together on the farm until 1906, when Mr. Lipperd left, going west and died in Oklahoma in 1907. During practically all of this latter period Miss Elizabeth Lipperd, the plaintiff, with the exception of brief intervals, appears to have remained a member of the family, doing usual household work and nursing the decedent and his wife.

By the will of Mr. Lipperd, duly executed and probated, among other legacies, he bequeathed $250 to his sister Elizabeth. No executor was named in the will, and letters of administration with the will annexed appear to have been issued to the son Frank, who executed a bond. Section 3304, of the Code of Iowa, 1897, provides that executors or administrators first appointed and qualified for the settlement of an estate shall, within ten days after the receipt of their letters, publish such notice of their appointment as the

court or clerk may direct. Frank never made any publication of the issue of letters. It is as well to state here that by section 3349 of the Iowa Code, all demands of the fourth class against an estate, and this includes such a claim as here involved, "not filed and allowed, or if filed and notice thereof, as hereinbefore provided, is not served within twelve months of the giving of the notice aforesaid, will be barred, except as to actions against decedent pending in the district or Supreme Court at the time of his death, or unless peculiar circumstances entitle claimant to equitable relief." Although at the time living with her nephew Frank in Iowa until October, 1908, and then with him in Schuyler county, Missouri, until his death in February, 1909, plaintiff never presented to him any claim for allowance against the estate. Frank moved down into Missouri in October, 1908, to or near Lancaster, Schuyler county, his family consisting of his wife, child, an infant, and his aunt, this plaintiff, going with him. His wife left him, going to Texas and while she was in Texas her husband died. She then returned to their home in Schuyler county and found plaintiff and possibly the child there, plaintiff in charge of the home. Plaintiff resided with the widow for awhile and then left her. Frank dying February 11, 1909, not having completed the administration of the estate, and leaving a widow and one child, Gladys, a daughter, then a minor, Frank F. Scarborough was appointed administrator *de bonis non* with the will annexed, of the estate of N. B. Lipperd, on his own petition, by the district court of Davis county, Iowa, having probate jurisdiction, on February 15, 1909. He qualified and gave bond and took upon himself the administration and on February 18, 1909, made due publication of the issue of letters of administration, notifying all persons having claims against the estate to exhibit them for allowance to the clerk of the district court, and on February 12, 1909, caused notice to be served on

Miss Elizabeth, plaintiff here, as a legatee, of his in-
tention to file the final report of his administration and
application for an order to pay to her her legacy of
$250. This notice was served on Miss Elizabeth Lip-
perd in Wapello county, Iowa, where there is evidence
tending to prove that she was temporarily sojourning
as in domestic service at the time. This administrator
made final settlement of the estate and was discharged
on October 22, 1910, exhibiting among other papers a
receipt from Miss Elizabeth for the $250, as her leg-
acy.

On February 5, 1910, plaintiff, Elizabeth Lipperd,
filed an account, in the probate court of Schuyler coun-
ty, Missouri, against the estate of N. B. Lipperd, de-
ceased, dated 1910, the account made up of two items:

"To services rendered deceased begin-
    ning January, 1891, as housekeeper
    and servant for 9 years .........$2160.00
To services rendered deceased beginning
    in 1900 as house servant and nurse
    continuing until the death of de-
    ceased in the year 1907 .......... 4800.00

        Total ..................,...$6960.00"

To this is attached the statutory affidavit by Eliz-
abeth Lipperd.

This affidavit was made before the judge of pro-
bate of Schuyler county, on February 5 and is indorsed
as having been filed in court on that day. Apparently
indorsed on it after it was filed, is the waiver of serv-
ice of the notice of presentation of the demand for al-
lowance to the probate court, signed by John H. Jef-
fries, administrator, and dated March 8, 1910.

Thereafter, on February 14, 1910, John H. Jef-
fries, as public administrator of Schuyler county, made
application to the judge of probate of that county, in
vacation, for an order authorizing him to take charge
of and administer the estate. The order was then

made ''that John H. Jeffries, as such public administrator, take charge of said estate and administer the same according to law and in compliance with the will of the said N. B. Lipperd, deceased, now on record in this court.'' At the regular March term of the court, and on the 7th day of March, 1910, the order made in vacation, directing John H. Jeffries, public administrator of the county, to take charge of and administer the estate of N. B. Lipperd, deceased, was affirmed. It was after this order had been made that Mr. Jeffries, as administrator, acknowledged service of notice of the account. At the term the administrator applied for a change of venue from the probate court to the Schuyler county circuit court, under section 4063, Revised Statutes 1909. The cause was accordingly certified into the circuit court of Schuyler county and afterwards taken on change of venue to Knox county. There it was tried before the court and a jury, resulting in a verdict in favor of plaintiff in the sum of $1750, upon which verdict a judgment was rendered, ''that plaintiff have and recover of and from the defendant the sum of $1750, so found by the jury, together with the costs herein made and expended, and thereof execution is awarded.''

REYNOLDS, P. J. (after stating the facts).—The case is here on a very full abstract of the record, practically the whole record, including the record proper as well as the bill of exceptions, covering some 206 pages.

The learned counsel for appellant, while making no formal assignment of errors, present 20 points upon which they rely for a reversal of this case, a great array of authorities being cited, which are claimed to support the various propositions advanced by these counsel. We do not think any public good is to be promoted by taking up and considering each one of the points as made separately and at length. Doubtless

they will appear in the official report of the case. We will add that while the points made are, for the most part supported by authority, very many of them do not meet this case. We will endeavor to dispose of them generally, with the view of determining what we consider the real, the crucial points, in this case.

While filing the account in the court without presentation to the administrator would not be sufficient as a presentation of a demand, it was obviously filed there to advise the probate court that there was a creditor, resident in that county, who held a claim against the estate of N. B. Lipperd, which she desired to have adjudicated. Hence the necessity of appointment of an administrator. There is no error in that. It has, however, been held by our court in Waltemar v. Schnick's Estate, 102 Mo. App. 133, point 2, l. c. 139 et seq., 76 S. W. 1053, that when the demand was presented in the probate court the administrator might be served with notice as provided by section 203, Revised Statute 1909, or that he might waive such notice and voluntarily appear, and that the service of notice or presentation or his voluntary appearance in the probate court stopped the running of the Statute of Limitations. We refer to this merely that what we have said above may not be held to challenge that which is decided in the Waltemar case.

It appears that at the outset and before the empanelling of a jury, counsel for defendant filed a motion requiring the clerk of the Schuyler county circuit court to send up an amended transcript and the original papers including the original demand in the case. A full transcript and the original papers required were afterwards sent up by the clerk of the circuit court of Schuyler county and filed in the cause on the second day of the trial. Beyond objecting to its filing at that time as being filed out of time, counsel for appellant made no attack upon it and made no application for continuance of the cause.

Before this paper was filed, counsel for the respective parties had agreed in a written stipulation filed, that an office copy which had been filed was a true copy of these papers and should thereafter be considered in the cause for all purposes as if duly forwarded by the circuit clerk of Schuyler county, in connection with and as part of the transcript of the circuit court of Schuyler county in the cause. In the light of this stipulation and in view of the fact that the full transcript was afterwards filed, it is impossible to hold that any harm resulted to appellant, either by failure to file duly certified papers in the first instance, or afterwards filing them.

It is argued that the account, on its face, is barred by the general Statute of Limitations of this State, referring to section 1895, Revised Statutes 1909. We are unable to agree to this proposition. The account as filed appears to have been a continuing account from 1891 to the date of the death of Napoleon B. Lipperd in 1907. No administrator was appointed in this State until 1910.

It is argued that the account is barred by the Statute of Limitations of the State of Iowa, requiring demands against an estate to be filed within one year after publication of notice of the granting of letters of administration. The application of the Iowa statute depends upon the fact of residence of the plaintiff, and there is evidence that she had been a resident of Missouri ever since 1908 and was so at the time of this trial. True she had been in Iowa between those dates, but there is substantial evidence tending to show that she was there merely temporarily and not as a resident. If a citizen and resident of Missouri, plaintiff was not bound to go to the State of Iowa and present her demand in that court, or to the administrator acting under the laws of the State of Iowa. There being property of the decedent in this State, any creditor of the decedent, residing in this State, was en-

titled to have letters of administration taken out; entitled to have the estate here administered upon in this State, and to have her claims against that estate adjudicated in her home State. That is the recognized law of our State from the earliest times.

This case really resolves itself then into one of fact as to whether plaintiff, respondent here, introduced substantial evidence at the trial of the case from which the jury had a right to conclude that plaintiff was a resident of this State when, in March, 1910, she presented her demand to this administrator, appointed in this State, and that she had been such resident from about October, 1908, to that time, and that she had rendered the services to her brother in his lifetime, under a contract between that brother and herself, that she was to be paid for those services.

There was substantial testimony introduced on her behalf in the trial of this case on both points; defendant's testimony tending to show that her brother, the decedent, had solicited her to come and make her home with him in 1891; that with occasional intermissions she had done so from that time until the date of his death, following him from his different places of abode and being with him up to the time of his last departure for Oklahoma in 1906. There was substantial evidence that her services were not those of a mere domestic but of a nurse. There was substantial testimony as to the value of the services. There was substantial testimony of a promise by the decedent to pay for these services and that plaintiff rendered them in expectation of being paid. It is true that all this evidence for plaintiff was sharply contradicted by that produced on behalf of defendant, but the jury were to determine that and were warranted in finding as they did. So we find no error in the action of the court in refusing an instruction asked by defendant at the close of the case, that under the law and the evidence in the case plaintiff could not recover.

Another instruction which was asked by defendant and refused by the court is as follows:

"In this case unless you believe from the greater weight of the evidence in the cause that notice in writing of the presentation of this claim in controversy was served on the administrator of this estate, or that he waived such presentation and notice thereof in writing within one year next after the 18th day of February, 1910, the first issue of the paper containing the notice of granting the letters in the State of Iowa to the said administrator, your verdict should be for the defendant."

This instruction assumes that plaintiff was bound to present her claim in Iowa. Holding that if plaintiff was a citizen of and resided in Missouri from 1908 to 1911, she was not bound to do so, and as the question of residence was a fact in issue, we hold that this instruction was properly refused. We do not think that section 1895, Revised Statutes 1909, is applicable here.

Error is assigned to the admission in evidence of the order of the probate court in directing the public administrator of Schuyler county to take on the administration of this estate. This order contains this paragraph: "And it appearing to the judge that the claim of Elizabeth Lipperd in the sum of $6960 based on personal services alleged to have been rendered said deceased during his lifetime, is now pending in this court, *and that there are no known relatives of said deceased in this State, who are, by law, entitled to administer on his estate, except the said Elizabeth Lipperd,* the claimant here, who herewith files the renunciation of her right to administer on said estate," etc., the public administrator is directed to take charge of the estate. It is to the words we have italicized in this order that complaint is made, it being claimed that outside of this, there is no substantial evidence of her residence in this State. As to the latter proposition, a careful reading of the testimony in the case

compels us to say that learned counsel for appellant are mistaken in this assertion. Some three or four witnesses testified to the fact of her residence in this State from sometime in 1908, the spring of summer of that year, until after she commenced this action. Even the younger Mrs. Lipperd, appellant's own witness, testified that plaintiff lived with them in Missouri in 1908. It is true that plaintiff was absent from the State on several occasions, but there is substantial testimony that these cases of absence were not with intention of changing her abode or residence, in the legal sense of that term. That, however, was submitted to the jury as a question of fact, to be determined on the evidence, and they found against the contention of appellant in the case. Furthermore, when the transcript containing this entry was offered in evidence, the objection made to it was that it proved to be a paper "filed originally in the circuit court after the mandate was offered as the certificate shows from the probate court having been deposited by the clerk of the probate court in the Schuyler county circuit court. We object further because this paper was not on file when the proceeding began, and it is now filed during the progress of the trial by the leave of court, and over the objections of defendant. It is incompetent, irrelevant and immaterial. Cannot legally be used as evidence in this case." Here is no specific objection aimed at this particular paper on account of the presence of this recital. The paper itself was properly admitted. If counsel for defendant desired to strike out this particular clause, they could and should have done so by way of instruction to exclude it from consideration of the jury; its presence in that paper did not destroy the probative force of the paper itself. Moreover, it seems very curious that counsel should have so earnestly insisted on the production of this very record, and when it was produced, objected to its introduction in evidence. To avoid any misapprehension, we add that a

careful examination of the abstract not only fails to show that the affidavit of plaintiff to her claim was offered in evidence at all, either as part of this certified copy or otherwise, but on the contrary, shows affirmatively that it was not offered or in evidence. While counsel for respondent appear to argue as if it had been in evidence, the record shows the contrary and we decline to convict the trial court of error, even on apparent concession of counsel, when the record shows affirmatively, as it does here, that there was no error.

Learned counsel for appellant complain of all the instructions given at the instance of plaintiff. We have concluded that the best way to handle this is to set out, in substance, all the instructions given for both parties.

For plaintiff the court gave eight instructions. First, that if the jury believed from the greater weight of evidence in the cause that plaintiff worked and labored or performed services as housekeeper, servant and nurse for Napoleon B. Lipperd from October, 1891, until April, 1907, the date of his death, or any part of the time, and that such services and work were done and performed at the request and during the lifetime of said Lipperd, under his promise that he would pay plaintiff for such work and services, and that he failed to so pay her for same, then his estate is liable to plaintiff for the reasonable value of such services, and their verdict should be for plaintiff for such sum, not exceeding the amount claimed, "unless you further find from the evidence that said claim is barred by the Statutes of Limitation of the State of Iowa or by the statutes of the State of Missouri."

Second. That while the burden is on plaintiff to establish a contract between herself and Napoleon B. Lipperd to pay her for her services, such contract need not be proven by positive and direct testimony but may be inferred from all the facts and circumstances proven and in evidence and the nature of the services

rendered, if from all the facts and circumstances in evidence the jury believe there was a contract and that such services were rendered under said agreement, and, if the jury further believe that plaintiff did the work for the decedent under such agreement expecting to receive pay therefor, then, etc., as in the first instruction.

Third. That under the law a receipt is only prima-facie evidence of payment and may be explained, and although the jury may believe that plaintiff signed the receipt in evidence, if they further believe from all the evidence in the case that it was not signed by plaintiff as a receipt in full for the identical services and account sued for, the jury should disregard the receipt. (It may be said in explanation of this instruction that defendant introduced a receipt dated Crescent, Oklahoma, April 10, 1906, signed by plaintiff, which reads: "Received of N. B. Lipperd $273.15, full of all accounts to date." There was testimony in the case for plaintiff, tending to show that this receipt was given in acknowledgment of payment for money theretofore placed by plaintiff in the hands of her brother, and for defendant that it was in settlement for plaintiff's services to decedent.)

Fourth. The court instructed the jury that although the estate of Napoleon B. Lipperd was administered in Iowa, such administration is of no force as against creditors who lived in Missouri at the time and as to Missouri property.

Fifth. That plaintiff is a single and unmarried woman and that as such the matter of residence is a question of intention upon her part, and although a resident of Missouri may work and be employed in Iowa or any other State, that fact alone does not destroy the residence of such person in this State.

The sixth instruction was the usual one as to the credibility of witnesses, the seventh as to the number of jurors necessary to agree in a verdict, and the

eighth was as to the form of the verdict, if the jury found for plaintiff.

While counsel for appellant assign error to the giving of all these, the second and fourth are the only ones upon which any argument and serious attack is made. The objection to these is that they failed to require the jury to find a mutual agreement or understanding.

In addition to the refused instructions, which we have before referred to, defendant asked and the court, at his instance, gave 21 instructions.

The first defines what constitutes a family.

The second told the jury that if one member of a family renders services to another by waiting on or caring for them, such services, in law, are presumed to be rendered gratuitously and without charge.

The third told the jury that if they found from the greater weight of evidence in the case that plaintiff was a member of the family of the decedent—that they were members of the same family, and during such time plaintiff rendered the services sued for for the decedent, and that those services were valuable to decedent, and that plaintiff had not been paid for them, still she cannot recover unless the jury further found and believed from the greater weight of the evidence in the case that there was a mutual agreement between the parties that plaintiff was to be paid for such services, and that unless plaintiff had proved to the satisfaction of the jury that at the time plaintiff rendered the services for decedent he intended to pay her for such further than furnishing her a home and board and clothing, they should find for defendant, although they found the services rendered were worth more than such home, board and clothing, provided the jury further found from the greater weight of the evidence "that they were members of one and the same family."

The fourth told the jury that if they found from the evidence that plaintiff was a member of the family of the decedent—that they were members of the same family, and that during such time plaintiff rendered the services sued for for decedent and that such services were valuable to decedent, and that plaintiff has not been paid for them, still she cannot recover unless the jury further believe from the greater weight of the evidence in the cause that there was a mutual agreement between the parties that she should be paid for such services. Unless plaintiff has proven and established to the satisfaction of the jury that at the time she rendered the services for decedent, it was her intention to charge and be paid for the same further than being furnished a home and being provided for by decedent, the verdict should be for defendant, even though the jury found that the services rendered were worth more than such home, board and clothing provided, or the jury further believed from the greater weight of the evidence that ''they were members of one and the same family.''

The fifth, in substance, told the jury that even though plaintiff intended to charge for the services and expected to be paid for them, she could not recover unless the jury further found from the greater weight of evidence in the cause that the decedent at the time expected plaintiff to so charge and that he expected to pay her for the same, ''provided you further believe they were both members of one and the same family.''

The sixth told the jury that unless they believed from the greater weight of evidence in the cause that there was a contract existing between plaintiff and decedent, existing at the time services were rendered by her for him, that he was to pay her for such services, their verdict should be for defendant, even though the jury may believe that they were worth more than

she has received, with the proviso above set out as to the membership of the same family.

(If there was any lack of direction as to the necessity of finding a mutual agreement in the second and fourth instructions given at the instance of plaintiff, and we find none, the third, fourth, fifth and sixth, as well as the eighth, given at the instance of defendant surely supplied that, and all the instructions given are to be tested as a whole.)

The seventh instruction told the jury that if they believed from the evidence that during the time the alleged services were being performed, decedent had on hand money and means which could have been applied in full or partial payment of the alleged services, then these are circumstances which the jury might take into consideration in making up their verdict.

The eighth told the jury that the statement of one member of a family to another, that she or he shall or will be paid out of his or her property after death, for services rendered and to be rendered, "is not such promise to pay that will warrant a recovery for such services rendered and though you may believe from the greater weight of the evidence in the cause that decedent stated, in substance, to plaintiff, you shall be well paid for your services out of my property after my death," this statement would not warrant or authorize the jury in returning a verdict for plaintiff.

The ninth told the jury that if they believed and found from the evidence in the case that the $250 bequeathed by deceased to plaintiff was so bequeathed in consideration of services rendered and was by the decedent intended to be in full for such services and plaintiff accepted the same, understanding that that was his intention, their verdict should be for defendant.

The tenth told the jury that it was not necessary that issues involved should be proven by positive and direct evidence alone but may be proven by circum-

stantial evidence, and that the jury should take into consideration all the facts, circumstances and conditions proven in the case in passing on the question and issues presented.

The eleventh told the jury that if they believed and found from the greater weight of evidence that decedent before his death had a settlement with plaintiff of all matters between them and that decedent paid plaintiff the amount agreed on then to be due, their verdict should be for defendant.

The twelfth told the jury that it devolved on plaintiff to prove by the greater weight of evidence the allegations of the statement and complaint in the case, and that if the jury found from the evidence that plaintiff came to the State of Iowa and entered the home of decedent under an agreement to the effect that since she was his sister and he was able and willing to pay her for her services to be rendered to his family, and that he would pay for them from time to time such sums as were satisfactory to both of them, without naming any particular sum or rate of wages, and that her wages or compensation as paid by decedent was satisfactory until the date of the death of his wife and breaking up of housekeeping in the State of Oklahoma, and that decedent and plaintiff then and there had a settlement of their accounts in that behalf and he then paid plaintiff the sum of $273.15 as the balance then due her and that afterwards at the home of decedent on the Iowa farm, plaintiff signed the receipt for that amount which was offered and read in evidence, she cannot recover.

The thirteenth told the jury that while the statements and declarations of the decedent against his interests, as testified to by witnesses in the case, are competent to be considered, the jury are cautioned and directed that such testimony should be received and weighed by them with great care and caution.

The fourteenth told the jury that the two items of the statement filed by plaintiff declared upon an express contract for services at a named rate per year, and unless plaintiff has proven such contract for payment for her services, she cannot recover in this action.

The fifteenth told the jury that the record of the administration in Davis county, Iowa, shows that it was the domiciliary and principal administration of the estate of the decedent; that letters of administration *de bonis non* were duly issued thereon by the district court of that county on the 18th of February, 1909, and that due legal notice of the issue thereof was given to date from that date, and that under the laws of the State of Iowa, plaintiff, if then a resident of that State, was required by law to make out her claim against the estate and serve notice thereof upon the administrator of the estate within one year after the day of the taking effect of the notice and that if the jury found that plaintiff was then at that date and afterwards for the space of one year a resident of the State of Iowa, then their verdict should be for defendant.

The sixteenth told the jury that although they might find from the evidence that plaintiff left the State of Iowa within one year next after the date of the taking effect of the notice of the issue of letters of administration in that State, to-wit, February 18, 1909, and came to the State of Missouri to file this claim in the probate court of Schuyler county and did file it there before or after the end of one year next after date of the taking effect of the notice of the letters of administration in the State of Iowa, then the Statute of Limitations of that State had commenced to run against her and her coming to this State did not stop its running and she cannot recover and your verdict must be for defendant.

The seventeenth told the jury that the statement filed by plaintiff in the cause shows that at the end of the first seven years of her service there was a cessation of services under the agreement and contract for services then existing and in force, and that a change was made in the nature of the services to be rendered as well as of compensation per year, and unless the plaintiff has shown by the greater weight of the evidence that there was no such cessation of services or change of conduct, then the first item as stated in the complaint is barred by the limitation of five years and your verdict upon that item should be for defendant.

The eighteenth told the jury that an action is not commenced in the State of Missouri against the estate of a deceased person by the filing of the same in the probate court but is commenced when notice of the presentation of such demand is served on the administrator in writing or he waives such service in writing.

The nineteenth told the jury that though they should find that decedent was indebted to plaintiff in the first item of the account, yet if they found that that item of account became due and payable more than five years from the commencement of the action, that is five years before the 14th of March, 1910, their verdict should be for defendant as to that item.

The twentieth set out the account sued on and told the jury that to warrant plaintiff in recovering on either item or any part of either, she must prove and establish her right by the greater weight of the evidence in the cause to recover under all the instructions by the court given in the case.

The twenty-first instruction was as to the form of the verdict, if for defendant.

The jury, eleven of the members concurring, found for plaintiff in the sum of $1750. The plaintiff recovering this amount under these instructions, is certainly entitled to that verdict. We have set out all the instructions, possibly with unnecessary prolixity, not,

however, holding those for appellant to be correct. Whether they are or not, as they were given at the instance of appellant, he certainly cannot complain. They do demonstrate that appellant had every claim he made submitted to the jury exactly as he demanded.

We do not consider it necessary to discuss any of the others points made by the learned and industrious counsel for appellant, nor go into a more detailed exposition of the testimony. We have read the abstract, briefs and arguments with great care. Our conclusion on the conduct of the trial is that the learned trial judge exercised great patience and ruled with great ability and with careful regard to the rules governing the admission of evidence. We discover no reversible error occurring at the trial.

The form of the judgment is not correct. Counsel for appellant argue that the defect is that it is against the administrator personally, not against the estate. But even that is incorrect. No execution should have been ordered against anyone. The judgment should have been ordered certified to the probate court of Schuyler county as against the estate. It is not necessary, however, to reverse for that. [Wood v. Flanery, 89 Mo. App. 632, l. c. 643; Hyde v. Honiter, 175 Mo. App. 583, 158 S. W. 83, l. c. 88; Sec. 2083, R. S. 1909.]

It is therefore adjudged by the court here, that the plaintiff have and recover of the defendant, as administrator of the estate of Napoleon B. Lipperd, deceased, the sum of seventeen hundred and fifty dollars with interest thereon at six per cent per annum from December 21, 1911, as well as her costs herein expended, and that said judgment be and it is hereby certified to the probate court of Schuyler county, Missouri, for classification against said estate as provided by law.

Finding no substantial error the judgment of the circuit court of Knox county is affirmed as herein amended. *Nortoni* and *Allen, JJ.,* concur.